UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:10-CR-110 |
| | ) | |
| TOMAS ESTRADA SARABIA | ) | |

**MEMORANDUM AND ORDER**

Now before the Court are the defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i) and his motion for appointment of counsel. [Docs. 1277, 1278]. The United States has responded in opposition to each motion. [Doc. 1280]. The defendant in turn filed messages of support [doc. 1281] but has not otherwise replied to the United States within the time allowed by this court's Local Rules.

The matter is now ripe for the Court's consideration. For the reasons stated below, the defendant's motions will be denied.

## I.  BACKGROUND

In November 2012, this Court sentenced the defendant to a net term of 480 months' imprisonment for cocaine and firearm offenses. The defendant is presently housed at FCI Victorville Medium I with a projected release date of November 21, 2044. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Jan. 13, 2021). He now moves for compassionate release due to his rehabilitative efforts, the COVID-19 pandemic, and a prior bout with that virus.

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but, as of November 20, 2020, are no longer to do

2

Case 2:10-cr-00110-RLJ   Document 1282   Filed 01/14/21   Page 2 of 8   PageID #: 6261

so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, ___ F.3d ___, 2021 WL 50169 (6th Cir. Jan. 6, 2021).[1] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

### A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 1277]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of his motion the defendant cites his rehabilitative efforts, the COVID-19 pandemic, and his prior bout with that virus. Consistent with § 3582 and the Sixth Circuit's holding in *Jones*, this Court has considered the defendant's arguments and the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[1] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .

. . .

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

4

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

At the defendant's correctional institution, there are currently 75 inmates and 33 staff positive for COVID-19, with 595 inmates and 33 staff having recovered, and three deaths among inmates and staff. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 13, 2021). These numbers are significant, but the Court simultaneously notes that outside the prison setting our nation is presently experiencing an escalating "surge upon a surge" in terms of COVID diagnoses, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

BOP medical records show that the defendant tested positive for COVID-19 in July 2020. [Doc 1277]. He recovered and was released from quarantine the following month. [*Id.*]. August 14, 2020 chest imaging showed clear lungs, no acute cardiopulmonary disease, and heart size within normal limits. [*Id.*].

The BOP's SENTRY Report categorizes the defendant as Care Level 1. "Care Level 1 inmates are less than 70 years of age and are generally healthy. They may have limited

5

medical needs that can be easily managed by clinician evaluations every 6 to 12 months."
*See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Jan. 13, 2021).

Turning to the nature and circumstances of the instant offense and the defendant's history and characteristics, in this case the defendant "was a primary source of supply and distributor of cocaine and marijuana in the Tri-Cities area of Northeast Tennessee" for more than two and a half years. [Presentence Investigation Report ("PSR"), ¶ 10]. He admittedly obtained and redistributed at least one kilogram of cocaine every two weeks. [*Id.*]. His role in the instant conspiracy was supervisory/managerial, utilizing and directing others including his own 14-year-old son. [*Id.*, ¶ 10, 28, 40, 61]. The defendant routinely carried a firearm in furtherance of his crimes. [*Id.*, ¶¶ 26, 35]. On one occasion, "he locked three people that [sic] owed him drug debts in an apartment and threatened to kill them if they left." [*Id.*, 42]. Another time, he agreed to join a co-defendant in "beat[ing] up" a suspected informant. [*Id.*, ¶ 43]. The defendant committed these acts while unlawfully in this country. [*Id.*, p. 2]. Previous convictions include assault (kicking a police officer), disorderly conduct, traffic offenses, indecent exposure, unlawful possession of oxycodone, and multiple instances of public intoxication. [*Id.*, ¶¶ 72-77].

The SENTRY Report shows that the defendant has incurred three disciplinary sanctions while incarcerated, for possession of an unauthorized item, interfering with taking count, and destruction of property. To his credit, the defendant has earned his GED while in BOP custody. He works and has taken some educational courses. The BOP considers him a medium security inmate with a medium risk of recidivism.

6

The Court has considered the relevant § 3553(a) factors, the circumstances of this case, the defendant's history and characteristics, and the arguments raised in the instant motion. The Court acknowledges the defendant's fear of COVID-19, and his earning of a GED is applauded. Those points, however, are not uncommon and are neither "extraordinary" nor "compelling" such as to warrant the extreme relief of compassionate release.

The defendant's conduct and role in this case were substantial. His BOP disciplinary infractions, while comparatively minor, are a concern. Almost 24 years of actual time remains on his sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate.").

Compassionate release on these facts would not reflect the seriousness of the offenses of conviction, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes. The pending compassionate release motion will accordingly be denied.

### III. APPOINTMENT OF COUNSEL

Turning to the defendant's motion for appointment of counsel, there is no constitutional right to an attorney in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (holding that the constitutional right to counsel does not extend to collateral proceedings). A district court has *discretion*, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the

7

interests of justice so require." In exercising that discretion, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

The compassionate release arguments presented to the Court in this case are straightforward and familiar, not beyond the capability of an ordinary *pro se* litigant. Moreover, pursuant to this court's Standing Order SO-19-04, Federal Defender Services of Eastern Tennessee ("FDSET") has already been appointed to represent all defendants who file a *pro se* § 3582(c)(1)(A) motion. FDSET has not made an appearance in this case.

## IV. CONCLUSION

As provided herein, the defendant's motions for compassionate release [doc. 1277] and for the appointment of counsel [doc. 1278] are **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge